UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| THELMA FLAGG,<br>    Appellant | CIVIL ACTION<br>NO. CV09-0476-A |
| VERSUS | |
| MICHAEL J. ASTRUE, COMMISSIONER<br>OF SOCIAL SECURITY,<br>    Appellee | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Thelma Flagg ("Flagg") filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits on June 6, 2007, alleging a disability onset date of May 1, 2007 (Tr. pp. 92, 95), due to "sleep apnea, back problems, hip problems, headaches, heart problems," and knee replacement (Tr. p. 120). Those applications were denied by the Social Security Administration ("SSA") (Tr. pp. 56, 57, 58).

A de novo hearing was held before an administrative law judge ("ALJ") on September 16, 2008 (Tr. p. 16), at which Flagg appeared with her attorney and a vocational expert ("VE"). The ALJ found that, although Flagg suffers from residuals from bilateral knee replacement, obesity, and sleep apnea (Tr. p. 11), she has the residual functional capacity to perform light work with no climbing of ropes, ladders, or scaffolds, only occasional climbing of stairs, and only occasional stooping, kneeling, crouching, or

crawling (Tr. p. 12), and can perform her past relevant work as a driver or managing her janitorial business (finding Flagg worked on a part-time basis by choice) (Tr. pp. 14-15). The ALJ concluded that Flagg was not under a disability as defined by the Social Security Act at any time through the date of her decision on November 21, 2008 (Tr. p. 15).

Flagg requested a review of the ALJ's decision, but the Appeals Council declined to review it (Tr. p. 1), and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Flagg next filed this appeal for judicial review of the Commissioner's final decision. Flagg sets forth the following issues for review on appeal (Doc. 9):

> 1. The ALJ's residual functional capacity assessment is not supported by any medical evidence, resulting in an erroneous decision that Flagg was not disabled at Step 4.
>
> 2. The ALJ erred in failing to find Flagg disabled pursuant to the testimony of the vocational expert.

The Commissioner filed a brief in response (Doc. 10), and Flagg filed a reply brief (Doc. 11). Flagg's appeal is now before the court for consideration.

### Eligibility for Benefits

To qualify for SSI benefits, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. 1381(a). Eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. 1382(a). To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to

2

last for a continuous period of not less than 12 months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. 1382(a)(3).

To qualify for disability insurance benefits, a plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. 416(i), 423. Establishment of a disability is contingent upon two findings. First, a plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. 423 (d)(1)(A). Second, the impairments must render the plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. 423(d)(2).

## Summary of Pertinent Facts

### 1. Medical Records

In 2001, Flagg was evaluated by Dr. Darien Slaughter for elbow and hip pain (Tr. p. 157). Dr. Slaughter diagnosed arthralgias in her elbows, hips, and lower back, with full range of motion and no synovitis, and prescribed Naprosyn and Ultram (Tr. p. 157). Dr. Slaughter later diagnosed her right elbow pain as lateral epicondylitis and treated it with a cortisone injection (Tr. p. 156). Flagg's hip and elbow pain resolved (Tr. p. 153). However,

in May 2001, Flagg's left hip began hurting again and he diagnosed greater trochanteric bursitis, which he treated with a cortisone shot and instructions to apply ice and to reduce her walking exercises for a while (Tr. pp. 154, 319). In March 2001, Flagg's right elbow was also treated with cortisone injections for pain with palpation of the lateral epicondyle, though she had a full range of motion (Tr. pp. 315-317). In June 2001, Flagg was diagnosed with cervical strain, thoracic strain, lumbar strain, and muscle spasms from exercising too long, and was prescribed Flexeril and Naprosyn (Tr. p. 318).

In August 2004, Flagg had a CT scan due to her complaints of migraine headaches; the CT scan did not show any significant abnormalities (Tr. p. 252). An electroencephalogram (EEG) was also normal (Tr. p. 264).

In June 2005, Flagg was evaluated for a sleep disorder and migraine headaches, and diagnosed with osteoporosis, migraine headache, and obstructive sleep apnea (Tr. pp. 220-221). Flagg was prescribed Celebrex, continued on Maxalt-MLT and Elavil, and a headache diet was recommended (Tr. pp. 220-238). Flagg underwent sleep studies in 2004 and 2006 for her diagnosed obstructive sleep apnea syndrome (Tr. pp. 238, 250-251, 275); home CPAP[1] therapy was

---

[1] CPAP stands for "continuous positive airway pressure." CPAP is a treatment that delivers slightly pressurized air during the breathing cycle. This keeps the windpipe open during sleep and prevents the episodes of blocked breathing in persons with obstructive sleep apnea and other respiratory problems. MEDLINEplus Health Information, Medical Encyclopedia: Nasal CPAP, *available at* http://www.nlm.nih.gov/medlineplus/encyclopedia.html (a service of the U.S. National Library of Medicine and the National Institutes of Health).

recommended (Tr. p. 238, 275).

Flagg received physical therapy and corticosteroid injections for her bilateral knee and hip pain, due to bilateral knee osteoarthritis, in 2005 from Dr. Diego Miranda, an orthopedic surgeon (Tr. pp. 146, 150-152). Flagg also received treatment for her left knee problems from Dr. Steven M. Kautz, an orthopedic surgeon, in 2006 and 2007 (Tr. pp. 202-216).

Flagg was evaluated in 2006 for chest pain, left arm numbness, and shortness of breath (Tr. pp. 178-179). Flagg was found to have a left ventricle ejection fraction of 55-60% with impaired relaxation, and a mildly dilated left atrium (Tr. p. 170).

In June 2007, Dr. Kautz performed a knee replacement surgery on Flagg's left knee due to degenerative arthritis (Tr. pp. 159, 164, 184-186, 193-195). After the surgery, Flagg continued to complain of left knee pain, as well as migraines (Tr. pp. 191-192), but x-rays showed a well-aligned cemented total knee arthroplasty (Tr. pp. 196-201). In August 2007, Flagg underwent a right knee arthroplasty due to degenerative arthritis followed by physical therapy (Tr. pp. 147-149, 297-301); again, x-rays showed a well-aligned cemented total knee arthroplasty (Tr. pp. 306-307). Flagg had additional physical therapy in January 2008 (Tr. pp. 302-304).

In February 2008, Flagg was diagnosed with right knee degenerative arthritis with a range of motion from 3 degrees to 120 degrees with mild quadriceps atrophy, but otherwise excellent stability, and was prescribed additional physical therapy (Tr. pp. 309-310). A follow-up appointment in August 2008 showed her right

and left knees to be healed, with excellent range of motion and good stability, and Flagg ambulated well (Tr. p. 311).

### 2. 2008 Administrative Hearing

Flagg was 48 years old at the time of her September 2008 administrative hearing (Tr. p. 92). Flagg testified that she was 5'6" tall, weighed 279 pounds, and that she had lost weight on her doctor's advice to try to reduce her back and knee pain (Tr. pp. 21-22). Flagg testified that she lives alone and finished high school with a certificate of completion in special education (Tr. p. 22).

Flagg testified that, when she was 18, she married and worked as an assistant in a nursing home (Tr. p. 23). Flagg testified that she was not actually certified as a nurse's aide, but had on-the-job training; she worked in a group at the nursing home (Tr. pp. 49-50). Flagg testified that she hurt her back when she picked up a patient (Tr. p. 31), and had physical therapy for that injury (Tr. pp. 31-32).

Flagg testified that she worked after 2003, despite the fact that her doctor advised her to quit working (Tr. pp. 20-21). Flagg testified she last worked in May 2007 (Tr. p. 23), supervising two people who worked for her as janitors; Flagg did not do any of the physical work herself (Tr. pp. 23-24). Before then, Flagg did the janitorial work herself and had to stoop, bend and lift (Tr. pp. 24, 44). Flagg testified that she also worked in food services from 1994-1999, worked as a driver for Handiwork Productions from 1999 to 2002, and worked as a nurse's assistant from 1980 to 1987

(Tr. pp. 26, 44). When Flagg worked in both food services and as a nurse's aide, she was required to lift and bend (Tr. p. 44). Flagg testified that, when she was a driver for Handiwork Productions, there was always an aide on the bus with her, to assist the clients (Tr. p. 46); Flagg also testified that she was not a job coach (Tr. p. 46).

Flagg testified that she has had her left knee replaced, and she suffers from sleep apnea and uses a CPAP machine (Doc. 20). Flagg testified that she had a left knee replacement in 2007, but her knee still hurts, more when standing, and she takes pain medication (Tr. p. 28). Flagg also had a right knee replacement in 2007 (Tr. p. 37).

Flagg testified she has a heart murmur, she takes medication when her heart beats too fast, and she takes Tylenol for her migraines (Tr. p. 28). Flagg testified that her migraines cause her heart to beat too fast (Tr. p. 28). Flagg has a migraine every two to seven days, for which she takes a pain pill; bright sunshine can trigger her migraines (Tr. p. 29). Flagg also takes medicine for high blood pressure (Tr. p. 29).

Flagg testified that someone visits her daily to make sure she has everything she needs and has taken her medicine, and to help her with cleaning and shopping (Tr. pp. 30-32). Flagg testified that she is unable to lift grocery bags, but her helper puts away her groceries for her (Tr. p. 32). Flagg testified that she also has two grown children (Tr. p. 31). Flagg visits with friends, relatives, and neighbors, her pastor visits her once a month, her

son takes care of her yard, and her helper and daughter clean her house, do her laundry, and cook for her (Tr. pp. 32-33). Flagg testified that she gets along with people (Tr. p. 41). Flagg testified that, when she is not in pain, she watches television, sleeps, reads the Bible, and walks (Tr. p. 33); she also drives (Tr. p. 35). Flagg has used a cane to walk since her first knee surgery in 2007 (Tr. p. 42). Flagg used to love to cook, but she can no longer stand over the stove (Tr. p. 33). Flagg testified that she has trouble sleeping, so she takes a sleeping pill (Lunesta); she also sleeps well with her CPAP machine (Tr. p. 35). Flagg testified she has problems lifting because of her back, but does not have any problems using her hands (Tr. p. 41). Flagg testified that she cannot stoop down and get back up, cannot climb stairs, and cannot reach above her head to put things on shelves (Tr. pp. 42-43).

Flagg testified that she does not have health insurance. Flagg testified that she was in special education in school, and that her helper assists her with paperwork and filled out her Social Security applications for her (Tr. p. 44).

The VE testified that Flagg's past work as a driver was light work (DOT 339.673-010, SVP 3), her janitorial work was medium level work (DOT 382.664-010, SVP 3), her work as a helper in food services was medium to heavy work (DOT 313.361-014, SVP 4), and her work as a certified nursing assistant was medium work (DOT 355.674-014, SVP 4).

The ALJ posed a hypothetical involving a person of the same

8

age, education, and vocational experience as Flagg, who can only perform light work with lifting and carrying up to 20 pounds occasionally and ten pounds frequently, can sit for up to two hours in an eight hour day, can stand and walk for six hours in an eight hour day, cannot climb stairs, and can only occasionally balance, stoop, kneel, crouch, or crawl (Tr. p. 51). The VE testified that such a person could no longer work in food services or as a janitor, but could work as a driver if she did not have to assist any handicapped people; in other words, such a person could perform Flagg's past work as a driver as that job was performed by her, but not as that job is generally done (Tr. p. 51). The VE also clarified that he had not considered the effects of medication on the person's ability to drive (Tr. p. 52), and stated that someone who takes sleeping pills and pain medication probably would not be allowed to drive by her physician (Tr. p. 54).

    The ALJ posed a second hypothetical involving a person of Flagg's age, education, and work experience, with the ability to perform sedentary work with lifting and carrying up to ten pounds occasionally, sitting for up to six hours in an eight hour day, and standing and walking for a total of two hours (Tr. p. 52). The VE testified that such a person would not be able to perform any of Flagg's past relevant work, but could work in a sales support occupation, census code 285 (80,198 jobs nationally and 1450 jobs in Louisiana). The VE testified that sales support positions require the ability to concentrate and follow one and two-step operations, which is unskilled work, and the ability to write and

9

follow written and oral instructions (Tr. p. 54). The VE testified that, if the person takes medication which affects her ability to concentrate and causes memory problems, she would not be able to do sales support work.

The VE further testified that, if the person needed assistance filling out paperwork and had to attend special education classes in high school, her ability to perform sales support work would be limited (Tr. p. 54).

## Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

### ALJ's Findings

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a). The sequential process required the ALJ to determine whether Flagg (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work she did in the past; and (5) can perform any other type of work. If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends. A finding that a claimant is disabled or is not

disabled at any point in the five-step review is conclusive and terminates the analysis. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 914 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995), citing Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987).

To be entitled to benefits, an applicant bears the initial burden of showing that she is disabled. Under the regulations, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis. Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy. Greenspan, 38 F.3d at 237.

In the case at bar, the ALJ found that Flagg has not engaged in substantial gainful activity since May 1, 2007, and that she has severe impairments of "residuals from bilateral knee replacements, obesity and sleep apnea," but that she does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1 (Tr. p. 11). The ALJ then found that, as of November 21, 2008, Flagg was still able to perform her past relevant work as a caretaker/driver or managing her janitorial business (Tr. pp. 14-15). The sequential analysis thus ended at Step 4, with a finding that Flagg was not disabled (Tr. p. 15).

<u>Law and Analysis</u>

1.

Flagg contends the ALJ erred in concluding she can perform light work and argues she cannot walk or stand for six hours in an

eight hour day.

In August 2008, following her last physical therapy, Flagg's right and left knees were found to be healed (Tr. p. 311). Flagg had excellent range of motion and good stability, and she ambulated well (Tr. p. 311). No doctor imposed limitations on Flagg for walking or standing. The evidence does not support Flagg's contention that she cannot walk or stand for up to six hours.

Although Flagg argues there is no medical evidence supporting the ALJ's conclusion that she can perform light work, Flagg's argument misplaces the burden of proof. Flagg's burden was to prove that she was disabled within the meaning of the Social Security Act. That requirement means that she must show a "medically determinable" impairment and that she is unable "to engage in substantial gainful activity". Greenspan v. Shalala, 38 F.3d 232 (5th Cir. 1994), cert. den., 514 U.S. 1120, 115 S.Ct. 1984 (1995); 20 C.F.R. §423(d)(1)(A) and (d)(3); 20 C.F.R. §404.1508; 42 U.S.C. §423(d)(1)(A). Therefore, the Commissioner does not have the burden of proving Flagg *can* do her past work; instead, Flagg has the burden of proving she *cannot*. Since there is no medical evidence supporting Flagg's alleged limitations in walking and standing, Flagg has not met her burden of proof in this case.

Substantial evidence supports the Commissioner's conclusion that Flagg can perform light work.

2.

Flagg next contends the ALJ failed to include any functional limitations resulting from Flagg's sleep apnea. However, the

medical records do not indicate that any doctor imposed any limitations on Flagg due to her sleep apnea and Flagg has not pointed to any. The evidence only shows that Flagg's sleep apnea was treated with a CPAP breathing machine at night. Therefore, Flagg failed to carry her burden of proving her obstructive sleep apnea syndrome limits her ability to work.

3.

Next, Flagg argues the ALJ erred in failing to properly consider the limiting effects of her obesity on her knee impairments.

As stated in 20 C.F.R. § 1.00(Q), obesity can be associated with disturbance of the musculoskeletal system; therefore the effects of obesity on the musculoskeletal system must be considered. Since Flagg's knee problems appear to have been caused by her obesity[2] and the medical evidence shows those problems were corrected, at least as of April 2008, the ALJ obviously considered the effects of Flagg's obesity when she considered the medical evidence as to the problems with Flagg's knees. Flagg's sleep apnea may also caused by, or is an effect of, her obesity which was also considered by the ALJ.

This ground for relief is meritless.

4.

Flagg also contends the ALJ failed to consider the effect her migraine headaches have on her ability to work. However, the ALJ

---

[2] Flagg testified at her hearing that she was 5'6" tall, weighed 279 pounds, and had lost weight on her doctor's advice to try to reduce her back and knee pain (Tr. pp. 21-22).

14

correctly noted that Flagg had apparently worked through May 2007 despite her migraines and takes Advil for her headaches; the ALJ did not find Flagg's headaches were a severe impairment. Although Flagg's attorney surmises that Flagg probably missed work due to her migraines, Flagg did not testify as to that. Thus, there is no evidence in the administrative record to indicate Flagg's migraine headaches affected her ability to work. This ground for relief is also meritless.

5.

Flagg further argues the ALJ erred in concluding she could work as a caretaker/driver and in failing to find she was disabled pursuant to the testimony of the VE.

Flagg argues the VE testified that she cannot work as a driver or perform sedentary work (sales support) due to the side effects of pain medication and sleeping pills. The VE questioned Flagg closely concerning the nature of her past work as a driver for Handiworks Production (Tr. pp. 46-48) and concluded she had *not* worked as a caretaker/driver as that job is generally performed because she only drove and did not assist any of the handicapped persons (Tr. p. 51). Flagg's testimony clearly showed that her work as a driver for Handiwork Productions was not performed as that job is generally performed (See DOT 359.673-010, "Chauffeur"). Instead, Flagg always drove with an assistant present to help the passengers.

Since Flagg did not perform the job of "caretaker/driver" as described in the Dictionary of Occupational Titles and the VE did

15

not state that Flagg performed that job, the ALJ clearly erred in finding that job was her past relevant work. Moreover, it is noted that the VE stated he did not consider medication side effects on the ability to work as a driver, and that a person who took sleeping pills and pain medication would probably not be able to work as a driver (or do sales support work).

Substantial evidence does not support the Commissioner's finding and conclusion that Flagg had past relevant work as a caretaker/driver and could continue to do such work.

However, the ALJ found Flagg could perform her past relevant work managing her janitorial service. Flagg argues she cannot return to that work because she cannot do the physical labor involved in janitorial work.

Contrary to the argument in Flagg's brief, Flagg testified that she *did not* do any physical work when she managed her janitorial business; Flagg testified that her two employees did all of the physical work and she was responsible for making sure the work was done (Tr. pp. 24-25).

Although Flagg stated at her hearing that she quit managing her janitorial service due to her knee replacement surgeries (Tr. p. 27), there is no evidence to show Flagg is not able to do that work. Flagg's knee replacement surgeries are completed and Flagg is fully recovered from them; no doctors have limited Flagg's ability to perform sedentary work due to knee problems.

Therefore, substantial evidence supports the Commissioner's finding that Flagg can perform her past relevant work managing her

16

janitorial service.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that the final decision of the Commissioner be AFFIRMED and that Flagg's appeal be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 18th day of February, 2010.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE

17